# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

MICHAEL RENE GONZALES,

                       Petitioner,

    vs.

MATTHEW CATE, Secretary,

                       Respondent.

CASE NO. 12-CV-1088-H (PCL)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, AND DENYING CERTIFICATE OF APPEALABILITY**

On May 2, 2012, Michael Rene Gonzales ("Petitioner"), a California state prisoner proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the constitutionality of his conviction. (Doc. No. 1.) On August 14, 2012, E. Valenzuela filed a response in opposition.[1] (Doc. No. 9.) On October 22, 2012, Petitioner filed a traverse. (Doc. No. 12.) On December 18, 2012 the magistrate judge issued a report and recommendation to deny the petition. (Doc. No. 13.) Petitioner filed an objection to the report and recommendation on January 17, 2013. (Doc. No. 15.) For the following reasons, the Court rejects Petitioner's objections and denies the petition for writ of habeas corpus.

/ / /

---

[1]   On May 14, 2012, this Court substituted Matthew Cate, Secretary, as respondent in place of "E. Valenzuela." (Doc. No. 4.)

## BACKGROUND

Petitioner seeks relief from his May 2008 conviction of first-degree murder with the use of a knife. (Doc. No. 1.) The summary of facts are taken from the California Court of Appeal's January 6, 2011, decision affirming judgment. (Doc. No. 10 ("Lodgment") No. 5.) A presumption of correctness attaches to state court determinations of factual issues on federal habeas review. 28 U.S.C. § 2254(e)(1).

Between 9:00 a.m. and 10:00 a.m. on May 30, 2008, Kory Sparks and Raymundo Lopez brought a load of used carpet padding to the Pad Connection, which is located on Commercial Street in San Diego. The Pad Connection is in the business of recycling carpet padding. Sparks regularly sold padding to the Pad Connection.

Earlier that day, [Petitioner] had called the Pad Connection and told employee Quyen Nguyen that he would be bringing in a load of carpet padding later that morning. [Petitioner] had previously sold carpet padding to the Pad Connection on four to six occasions.

When [Petitioner] arrived at the Pad Connection with his load, Nguyen was working with Sparks and Lopez. Nguyen was operating a forklift. Because [Petitioner] parked his truck in a location that made it difficult for Nguyen to collect the padding that Sparks and Lopez had brought, Nguyen asked [Petitioner] to move his truck. [Petitioner] did not say anything, and did what Nguyen had requested. Nguyen resumed weighing the padding that Sparks had brought in.

As Nguyen was weighing Sparks's material, [Petitioner] walked up behind Sparks, lifted something in his right hand, and struck Sparks in the shoulder and neck area three or four times. Sparks fell to the ground, and [Petitioner] began walking toward the street. Nguyen initially thought that Sparks had been knocked unconscious, but then he saw blood and noticed that [Petitioner] was holding a knife.

Angel Rodriguez, who had seen [Petitioner] enter the warehouse and approach Sparks, went to check on Sparks, as did Lopez. Lopez saw blood coming from behind Sparks's head. Rodriguez and Lopez saw [Petitioner] standing near the door to the warehouse. Lopez spoke to [Petitioner] in Spanish, telling him to "calm down," but [Petitioner] told Lopez to move aside. Lopez could see that [Petitioner] had a knife, so Lopez backed away. [Petitioner] approached Sparks as he lay on the ground and began stabbing him in the chest and stomach. Rodriguez and Lopez both ran away.

Several people ran to a police station that was across the street from the Pad Connection and yelled out that someone had been stabbed. The witnesses pointed out [Petitioner] as the person who had done the stabbing. [Petitioner] was in his truck, which was stopped at a red light at a nearby intersection.

Officer Cesar Castro, who was on foot, walked into the street and

made eye contact with [Petitioner]. Castro motioned for [Petitioner] to pull over to the side of the road, which [Petitioner] did. [Petitioner] was sweaty and excited, and appeared to be out of breath.

When Officer Castro approached [Petitioner], [Petitioner] began making unsolicited comments to Officer Castro, such as "[Y]ou know, I'm here on my own. How would you feel if you were the victim all the time[?]" [Petitioner] also said things like, "[E]verybody is against me, . . . , [¶] . . . [¶] . . . "Nobody cares for me, and everyone takes advantage of me," and asked Castro, "What would you do?" [Petitioner] was eventually arrested.

A few days later, police crime scene specialists searched [Petitioner's] truck and trailer. They found a knife sheath with a "Jeep" logo on it in the center console of the truck, and found a knife with a "Jeep" logo in the trailer, on top of some carpet padding. The knife appeared to be a hunting or sporting knife, and had a four-and-three-quarters inch long blade. The knife had bloodstains on it. The blood was tested and was determined to match Sparks's DNA.

An autopsy was performed on Sparks's body. Sparks had suffered a wound to his neck, and several wounds on the left side of his chest. The neck wound, which was approximately five inches deep, went from the back right side of Sparks's neck to the left front of his body. Sparks's spinal cord had been transected between the fourth and fifth cervical vertebra, which would cause paralysis to all parts of his body below the fifth vertebra. There were 10 other stab wounds on Sparks's chest, all of which were life threatening wounds. The coroner concluded that Sparks died from multiple stab wounds to his neck and chest. Sparks did not die immediately from the wound to his neck; blood was discovered in his chest cavity, which indicated that Sparks's heart was beating at the time he received the additional wounds to his chest.

(Id. at 2-4.)

The California Court of Appeal affirmed Petitioner's conviction on January 6, 2011. (Id. at 1.) Petitioner did not directly appeal the Court of Appeal's decision. (See Lodgment No. 6.) Instead, Petitioner sought habeas corpus relief from the California Supreme Court. (Id.) In his initial habeas petition to the California Supreme Court, Petitioner alleged that there was insufficient evidence to sustain his conviction for first-degree murder and that his conviction should be reduced to second-degree murder. (Id. at 3.) On December 15, 2011, Petitioner sought to amend his petition. (Lodgment No. 7.) The California Supreme Court "Received" his amended petition, but did not mark it "Filed." (Lodgment No. 8.) Petitioner raised three new claims in his amended petition: a violation of his due process rights based on insufficient evidence that

Petitioner was not guilty by reason of insanity; a due process violation based on the trial court's refusal to give a lesser-included offense jury instruction; and a due process violation based on ineffective assistance of counsel. (Lodgment No. 7 at 6-10.) On March 14, 2012, the California Supreme Court summarily denied review without comment. (Lodgment No. 8.) On May 2, 2012, Petitioner filed his federal petition for writ of habeas corpus. (Doc. No. 1.)

In his federal petition, Petitioner alleges claims for a violation of his due process rights based on insufficient evidence to sustain his conviction for first-degree murder; a violation of his due process rights based on substantial evidence that Petitioner was not guilty by reason of insanity; and a violation of his due process rights stemming from the trial court's alleged refusal to give a lesser included offense jury instruction. (Id. at 12-21, 23.)

## DISCUSSION

### I.      Standard of Review

A petitioner in state custody pursuant to the judgment of a state court may challenge his detention only on the grounds that his custody is in violation of the United States Constitution or the laws of the United States. 28 U.S.C. § 2254(a). The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") (codified as amended 28 U.S.C. § 2254(d)), applies to § 2254 habeas corpus petitions filed after 1996. See Lindh v. Murphy, 521 U.S. 320, 336 (1997). Under AEDPA, the Court may only grant a habeas petition when the underlying state court decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) and (d)(2).

To determine what constitutes "clearly established federal law" under 28 U.S.C. § 2254(d)(1), courts look to Supreme Court holdings existing at the time of the state court decision. See Lockyear v. Andrade, 538 U.S. 63, 71-72 (2003). A state court's

decision may be found to be "contrary to" clearly established Supreme Court precedent: (1) "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or (2) if the state court confronts a set of facts "materially indistinguishable" from a decision of the Court, but arrives at a different result. Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Lockyear, 538 U.S. at 72-75. A state court decision involves an "unreasonable application" of clearly established federal law, "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases, but unreasonably applies it to the facts of a particular state prisoner's case," or if a state court incorrectly extends the established rule to a new context, or refuses to extend it to a new context where it should apply. Williams, 529 U.S. at 407; Lockyear, 538 U.S. at 76. To be an unreasonable application of federal law, the state court decision must be more than incorrect or erroneous; it must be objectively unreasonable. Id. at 75.

Federal habeas courts apply AEDPA standards to "the last reasoned decision" by a state court addressing the merits of the claim. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). The last reasoned decision by the state court addressing these issues is the California Court of Appeal's January 6, 2011, unpublished opinion in People v. Gonzales, D055593. (Lodgment No. 6.)

State prisoners must exhaust their federal constitutional claims using procedures and remedies available in the state courts before a federal court can grant habeas relief. 28 U.S.C. §2254(b-c). The exhaustion requirement obliges a petitioner to "fairly present" the claim to the highest state court by describing in the state proceedings both the operative facts and the federal legal theory on which the claim is based, "to provide the state courts with a fair 'opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim." Anderson v. Harless, 459 U.S. 4, 6 (1982) (quoting Picard v. Connor, 404 U.S. 270, 276-77 (1971)). "If Petitioner properly argued his claims through 'one complete round of the State's established appellate

review process' during an earlier petition, . . . they are exhausted and can be considered in federal habeas proceedings." Cooper v. Neven, 641 F.3d 322, 326-27 (9th Cir. 2011) (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999)).  Although federal habeas relief cannot be granted on claims a petitioner failed to exhaust, a federal court may nevertheless deny habeas relief on unexhausted claims. See 28 U.S.C. § 2254(b)(2); see also Granberry v. Greer, 481 U.S. 129, 135 (1987) (a federal court may deny an unexhausted claim on the merits, but only "if it is perfectly clear that the applicant does not raise even a colorable federal claim[.]").

The district court may accept, reject, or modify the findings and recommendations of the magistrate judge.  28 U.S.C. § 636(b)(1)(C).  If neither party objects to the findings and recommendations of the magistrate judge, the district court is not required to make a de novo determination.  See id.

**II.    Analysis**

    **A.    Sufficiency of the Evidence**

Petitioner  alleges that there was insufficient evidence to sustain his conviction for first-degree murder. (Doc. No. 1 at 12-22.) Specifically, he argues that the evidence was insufficient to support the jury's finding that he acted with the requisite premeditation and deliberation.  (Id. at 12-21.)  Petitioner argues that as a result, he is not guilty of first-degree murder, but rather second-degree murder.  (Id.)

On habeas review, federal courts evaluate a constitutional due process challenge to the sufficiency of the evidence to support a conviction under the standards set out by the Supreme Court in Jackson v. Virginia, 443 U.S. 307, 318-19 (1979).  Under Jackson, a habeas petitioner challenging a state criminal conviction based upon sufficiency of the evidence may obtain relief only "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof beyond a reasonable doubt."  Id. at 324.  Whether any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt is viewed in the light

most favorable to the prosecution.  Id. at 318-19.  Even if the record contains facts that support conflicting inferences, a reviewing court must presume that the trier of fact resolved any conflicts in favor of the prosecution, and defer to that determination. Id. at 326.  Additionally, after AEDPA, federal habeas courts apply the standard "with an additional layer of deference to the state court result." Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005).

In determining that sufficient evidence supported Petitioner's conviction, the California Court of Appeal used a state law standard identical to the Jackson standard. (Lodgment No. 6 at 10 (applying People v. Johnson, 26 Cal.3d 557, 578 (1980)).  The California court determined that there was sufficient evidence from which a rational trier of fact could conclude that Petitioner murdered Sparks in a premeditated and deliberate fashion. (Lodgment No. 6 at 8.)  Under California law, the manner of killing, if it shows a calculated design to ensure death, establishes the requisite intent of first-degree murder. People v. Horning, 34 Cal. 4th 871, 902-03 (2004); see also People v. Brady, 50 Cal. 4th 547, 564 (2010) (substantial evidence of premeditation and deliberation where evidence showed that defendant not only shot at an officer from a car, but got out of the car and shot the officer in the back and then stood over the officer and shot a third time.)  The evidence shows that Petitioner retrieved his knife from his truck before he entered the warehouse. (Lodgment No. 5 at 7.)  The record also shows that after Petitioner originally stabbed Sparks from behind, Petitioner walked away for a moment, during which witness Raymundo Lopez told Petitioner to calm down.  (Id.)  Petitioner responded by telling Lopez to move away, walked back to Sparks, and proceeded to stab him in the chest an additional ten times.  (Id.)  Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could find Petitioner's actions were designed to ensure Sparks' death.  See Jackson, 443 U.S. at 318-19, 324.   Therefore, the Court of Appeal's decision affirming Petitioner's conviction was not contrary to or an unreasonable application of established Supreme Court law.

**B.      Sufficient Evidence that Petitioner was Not Guilty by Reason of Insanity**

Petitioner's second claim alleges that there was insufficient evidence to support the jury's determination that Petitioner was legally sane at the time he committed the murder.  (Doc. No. 1 at 21.)  Petitioner did not raise this claim to the state court on direct appeal. (Lodgment No. 5 at 1-8.) Petitioner raised this claim on collateral review with the California Supreme Court in his amended habeas petition.  (Lodgment No. 7 at 6-8.)

**1.      Whether Petitioner Exhausted the Claims Raised in His Amended Petition**

Respondent argues that Petitioner failed to exhaust his insanity claim because the California Supreme Court denied Petitioner's amended claims on procedural grounds and not federal law grounds.  (Doc. No. 9 at 6, 8-9.)  A federal court may not grant federal habeas corpus relief unless a petitioner has exhausted his state court remedies with respect to all claims contained in the petition.  28 U.S.C. §2254(b); Castille v. Peoples, 489 U.S. 346, 349 (1989).  To exhaust state court remedies, a federal claim must be fairly presented to the state's highest court, which in turn must dispose of the claim on the merits.  Anderson v. Harless, 459 U.S. 4, 6, 8 (1982). Summary denials in state court are presumed to be on the merits, absent some indication to the contrary.  Harrington v. Richter, 131 S. Ct. 770, 785 (2011); see Harris v. Superior Court, 500 F.2d 1124, 1128 (1974) (Typically, the California Supreme Court denies habeas petitions on state procedural grounds by citation to authority or by comment.)

The California Supreme Court marked Petitioner's amended habeas petition "Received," but not "Filed." (Lodgment No. 8.)  The California Supreme Court subsequently summarily denied the petition. (Id.) The California Supreme Court gave no indication that it denied Petitioner's habeas petition on procedural grounds.  (See Lodgment No. 8.)  Its denial did not cite any authority nor did it state that the petition was procedurally deficient.  (Id.)  Thus, the Court concludes that Petitioner's amended

claims were denied on the merits and as a result, Petitioner has exhausted these claims. See Harrington, 131 S. Ct. at 785.

### 2. Whether the Evidence is Sufficient that Petitioner was Not Guilty by Insanity

Because Petitioner first raised his insanity claim to the California Supreme Court, who denied without comment, there is no written state court decision. (See Lodgment No. 8.) A federal court lacking a written opinion from a state court addressing the merits of a federal claim undertakes an independent review of the record. Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002); see also Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000) ("Federal habeas review is not de novo when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law.") Nonetheless, the federal court must "still defer to the state court's ultimate decision." Pirtle, 313 F.3d at 1167. Thus, the Court conducts an independent review of Petitioner's insanity claim giving deference to the California Supreme Court's denial of the claim. See Delgado, 223 F.3d at 982.

Petitioner challenges the outcome of the sanity portion of his trial. Under California law, "Insanity is a plea raising an affirmative defense to a criminal charge." People v. Hernandez, 22 Cal.4th 512, 522 (2000). "[T]he issue at the insanity trial is not whether the defendant has committed the act but whether or not he should be punished." Id. (citing People v. Flores, 55 Cal. App. 3d 118, 121.) At the sanity phase, the burden is upon the defendant to prove by a preponderance of the evidence that he was insane at the time of the offense." Id. at 515 (citing Flores, 55 Cal. App. 3d at 121).

Unlike California law, the Supreme Court has "not said that the Constitution requires the States to recognize the insanity defense." Medina v. California, 505 U.S. 437, 449 (1992). In the absence of Supreme Court authority, federal courts have held that where the defendant bears of the burden of proving insanity as a defense, constitutional challenges arising from a bifurcated trial regarding the defendant's sanity

are not cognizable on federal habeas review. See, e.g., Gall v. Parker, 231 F.3d 265, 307 (6th Cir. 2000) (sufficiency of the evidence challenge to jury's sanity finding not cognizable under § 2254 where sanity is not an element of crime), overruled on other grounds by Bowling v. Parker, 344 F.3d 487, 501 n. 3 (6th Cir. 2003); Battie v. Estelle, 655 F.2d 692, 702 n. 23 (5th Cir.1981) (denying habeas relief for challenge to sufficiency of evidence of sanity because there is no federal constitutional right to insanity defense); see also Laboa v. Calderon, 224 F.3d 972, 979 (9th Cir. 2000) (violation of state statutory rule requiring corroboration of accomplice testimony did not warrant habeas relief because state law rule was not required by the Constitution or federal law).

At a bifurcated trial, a jury determined that Petitioner did not qualify for a not guilty by reason of insanity plea. (Lodgment No. 1, CT vol. 2 at 426-34.) Because federal constitutional law does not require an insanity defense, the state court's determination that Petitioner was not insane when he committed murder did not contradict federal Supreme Court law. Habeas relief is only available if a state court decision "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court." 28 U.S.C § 2254(d)(1). Thus, Petitioner's claim fails. See id.

### C.   Lesser Included Offense Jury Instruction

Petitioner alleges a due process violation based on the trial court's alleged failure to instruct the jury on the lesser included offense of manslaughter. (Doc. No. 1 at 23.) Petitioner's claim is without merit because his allegation is belied by the record. (See Lodgment No. 2, RT vol. 9 at 1144-47, 1150-52, 1178, 1185-96, 1189-91.) Dows v. Wood, 211 F.3d 480, 486-87 (9th Cir. 2000) (factually unfounded claim presents no basis for federal habeas relief).

As the record demonstrates, the trial court instructed the jury on the lesser included offenses of voluntary and involuntary manslaughter:

The crime charged in this case requires proof of the union or joint

operation of act and wrongful intent. for you to find a person guilty of the crime in this case or any lesser included offense, that person must not only intentionally commit the prohibited act, but must do so with . . . specific intent and/or mental state. The act and the specific intent and/or mental state required are explained in the instruction for the crime.

(Lodgment No. 2, RT vol. 9 at 1178.)

The Court continued regarding the lesser offense of voluntary manslaughter:

A killing that would otherwise be murder is reduced to voluntary manslaughter if the defendant killed someone because of a sudden quarrel or in a heat of passion. The defendant killed someone because of a sudden quarrel or in the heat of passion if one the defendant was provoked; two, as a result of the provocation, the defendant acted rationally and under the influence of intense emotion that obscured his reasoning or judgment; and three, the provocation would have caused a person of average disposition to act rationally and without due deliberation. That is, from passion rather than from judgment. [¶] . . . In order for heat of passion to reduce a murder to voluntary manslaughter, the defendant must have acted under the direct and immediate influence of provocation as [the court] defined it.

(Lodgment No. 2, RT vol. 9, 1185-86.)

On the crime of involuntary manslaughter the court stated:

When a person commits an unlawful killing but does not intend to kill and does act with conscious disregard for human life, then the crime is involuntary manslaughter. The difference between other homicide offenses and involuntary manslaughter depends on whether the person was aware of the risk to life and that his or her actions created and consciously disregarded that risk.

. . . An unlawful killing resulting from a willful act committed with intent to kill and conscious disregard of the risk for human life is involuntary manslaughter. The defendant committed involuntary manslaughter if, one, the defendant committed a crime that posed a high risk of death or great bodily injury because of the way it was committed. Two, the defendant's acts unlawfully caused the death of another person.

(Id.)

The court also gave specific instructions to the jury about how to fill out the verdict forms if they found that Petitioner was guilty of a crime other than first-degree murder. (Lodgment No. 2, RT vol. 9 at 1189-91.)

The record undisputedly establishes that the jury was instructed on the lesser included offense of manslaughter. Petitioner's argument that the trial court failed to

instruct the jury on the lesser included offense is without factual merit.  Thus, Petitioner has failed to allege facts sufficient for habeas relief.  <u>See</u> 28 U.S.C. § 2254(d).

**E.    Denial of Certificate of Appealability**

Under AEDPA, a state prisoner seeking to appeal a district court's denial of a habeas petition must obtain a certificate of appealability from the district court judge or a circuit judge.  28 U.S.C. § 2253(c)(1)(A).  A court may issue a certificate of appealability only if the applicant has made "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To satisfy this standard, the petitioner must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).  In the present case, the Court concludes that petitioner has not made such a showing and therefore the Court denies Petitioner a certificate of appealability.

<u>CONCLUSION</u>

Petitioner has not established that the state court's determination "was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States" or that it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  <u>See</u> 28 U.S.C. § 2254(d).  Accordingly, the Court adopts the magistrate judge's report and recommendation and denies the petition for habeas corpus.  In addition, the Court denies Petitioner a certificate of appealability.

**IT IS SO ORDERED**.

DATED: March 18, 2013

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT